# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| ELCINDA PERSON, individually and on behalf of others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| TRAINING SERVICES, INC. d/b/a AVIATION INSTITUTE OF MAINTENANCE, | : : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : | |

_____/

## Preliminary Statement

1.      Plaintiff Elcinda Person ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of automated and prerecorded telephone calls, which, Congress found, were rightly regarded as in invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      The Plaintiff alleges that Training Services, Inc. d/b/a Aviation Institute of Maintenance ("Aviation Institute") made automated and pre-recorded telemarketing calls to Plaintiff and other putative class members without their consent.

3.      This Complaint also relates to Defendant's conduct making telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as making such calls to individuals who previously indicated that they no longer wanted to be contacted, and to otherwise obtain injunctive and monetary relief for all persons injured by Defendant's conduct.

4.      The Plaintiff and putative class members never consented to receive these calls. Because automated dialing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal robocalls from or on behalf of the Defendant.

5.      A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6.      Plaintiff Elcinda Person resides in this District.

7.      Defendant Training Services, Inc. d/b/a Aviation Institute of Maintenance is a Virginia corporation with a registered agent of Gerald Yagen, 4455 South Blvd., Suite 400 in Virginia Beach, VA 23452.

2

## Jurisdiction & Venue

8.     The Court has federal question subject matter jurisdiction over these

TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9.     The Court has personal jurisdiction over the Defendant because they

engaged in nationwide telemarketing conduct, including into this District.

Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of

the events or omissions giving rise to the claim occurred in this District, as

the automated calls were commissioned into this District. Furthermore,

Furthermore, Aviation Institute has a campus in Duluth, GA.

## TCPA Background

10.     The TCPA makes it unlawful "to make any call (other than a call

made for emergency purposes or made with the prior express consent of the called

party) using an automatic telephone dialing system or an artificial or prerecorded

voice … to any telephone number assigned to a … cellular telephone service." *See*

47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to

persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C.

§ 227(b)(3).

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12.     While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

13.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person." 47 C.F.R. §
64.1200(f)(12).

14.    The TCPA specifically required the FCC to "initiate a rulemaking
proceeding concerning the need to protect residential telephone subscribers'
privacy rights to avoid receiving telephone solicitations to which they object." 47
U.S.C. § 227(c)(1).

15.    The FCC was instructed to "compare and evaluate alternative
methods and procedures (including the use of … company-specific 'do not call'
systems …)" and "develop proposed regulations to implement the methods and
procedures that the Commission determines are most effective and efficient to
accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

16.    Pursuant to this statutory mandate, the FCC established company-
specific "do not call" rules. *In the Matter of Rules and Regulations Implementing
the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992)
("TCPA Implementation Order").

17.    The FCC found that "the company-specific do-not-call list
alternative is the most effective and efficient means to permit telephone subscribers
to avoid unwanted telephone solicitations." *Id*. at 8765, ¶ 23. 19.

18.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24. 20.

19.     It accordingly placed the burden on telemarketers to implement and prove the implementation of their compliance procedures.

20.     These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

21.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

22.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

23.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

24.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that they have implemented the required policies and procedures.

25.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

26.     By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

27.     Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

28.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

29.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

30.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

31.     *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018),

https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

32.      Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

### Factual Allegations

33.      Aviation Institute uses telemarketing to attract new students.

34.      One of the telemarketing strategies used by Defendant involve the use of automated dialers and prerecorded messages.

35.      While such automated technology may save time and money for Defendant's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

Calls to The Plaintiff

36.      Plaintiff Person is a "person" as defined by 47 U.S.C. § 153(39).

37.      Mr. Person's telephone number, (404) 338-XXXX, is registered to a cellular telephone service.

38.     Mr. Person was called by the Defendant on several different dates, including: May 15, 16, 17, 20, 21, 28, 2019, June 4, 6, 7, 10, 11, 12, 13, 14, 17, 20, 25, 2019.

39.     The purpose of the calls was to sell Defendant's aviation education services.

40.     The calls began with pre-recorded messages.

41.     Plaintiff had not consented to receive Defendant's calls prior to the receipt of these calls.

42.     In fact, on multiple dates the Plaintiff informed the Defendant he was not interested in receiving their solicitation calls.

43.     These dates include: May 15, 17, June 6, 10, 14, 20, 2019.

44.     Furthermore, on June 5, 2019, the Plaintiff, through counsel, contacted the Defendant informing them that they did not have consent to call.

45.     Despite these requests, and because of Defendant's lack of policies relating to telemarketing, the calls to the Plaintiff continued.

**Class Action Allegations**

46.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a classes of all other persons or entities similarly situated throughout the United States.

47.     The classes of persons Plaintiff propose to represent is tentatively

defined as:

INTERNAL DO NOT CALL LIST CLASS

All natural persons in the United States who from four years prior to
the filing of this action: (1) Defendant, or a third party acting on their
behalf, called (2) with two or more telemarketing calls in a 12-month
period.

PRE-RECORDED CALL CLASS

All persons within the United States to whom: (a) Defendant and/or a
third party acting on its behalf, made one or more non-emergency
telephone calls; (b) to a cellular telephone number; (c) through the use
of a pre-recorded message; and (d) at any time in the period that begins
four years before the date of filing this Complaint to trial.

48.     These two proposed classes are referred to as the "Classes".

49.     Excluded from the Classes are counsel, the Defendant, and any

entities in which the Defendant has a controlling interest, the Defendant's agents

and employees, any judge to whom this action is assigned, and any member of

such judge's staff and immediate family.

50.     The Classes as defined above are identifiable through phone

records and phone number databases.

51.     The potential Classes members number at least in the thousands.

Individual joinder of these persons is impracticable.

52.     The Plaintiff is a member of the Classes.

11

53.     There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

a.     Whether Defendant violated the TCPA by using automated calls to contact putative Classes members cellular telephones;

b.     Whether Defendant maintained a written "do not call" policy;

c.     Whether Defendant trained their employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

d.     Whether Defendants recorded or honored "do not call" requests;

e.     Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call; and

f.     Whether the Plaintiff and the Classes members are entitled to statutory damages because of Defendant's actions.

54.     The Plaintiff's claims are typical of the claims of the members of the Classes.

55.     The Plaintiff is an adequate representatives of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and

adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56.     Common questions of law and fact predominate over questions affecting only individual Classes members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

57.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58.     The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

## Count One:
## Violation of the TCPA's Automated Telemarketing Call Provisions

59.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60.     The Defendant violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's cellular telephone number using a pre-recorded message or (b) by the fact that others made those calls on their behalf.

61.     The Defendant's violations were negligent and/or willful.

62.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making pre-recorded calls except for emergency purposes, to any cellular telephone number in the future.

### Count Two:
### Violations of the TCPA's Internal Do Not Call Provisions

63.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64.     Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Internal DNC List Class Members' telephone numbers.

65.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

66.     Defendant did so despite not training their personnel on the existence or use of any internal "do not call" list.

14

67.     Defendant did so despite not recording or honoring "do not call" requests.

68.     Defendant placed two or more telephone calls to Plaintiff and Internal DNC List Class Members in a 12-month period.

69.     Plaintiff and Internal DNC List Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff request the following relief:

A.     Injunctive relief prohibiting Defendant from calling cellular telephone numbers using a pre-recorded voice, absent an emergency circumstance;

C.     An award of damages to Plaintiff and the Classes, as allowed by law;

D.     An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

E.     Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: August 20, 2019          PLAINTIFF, individually and
                                on behalf of others similarly situated,

                                By:

                                */s/ Steven H. Koval*
                                Steven H. Koval
                                Georgia Bar No. 428905
                                3575 Piedmont Road
                                Building 15, Suite 120
                                Atlanta, GA  30305
                                Telephone:  (404) 513-6651
                                Facsimile: (404) 549-4654
                                shkoval@aol.com

                                Anthony I. Paronich (*pro hac vice* to be filed)
                                Paronich Law, P.C.
                                350 Lincoln Street, Suite 2400
                                Hingham, MA 02043
                                [o] (617) 485-0018
                                [f] (508) 318-8100
                                anthony@paronichlaw.com

                                Andrew Heidarpour (*pro hac vice* to be filed)
                                1300 Pennsylvania Ave., NW 190-318
                                Washington, DC 20004
                                Telephone: 202-234-2727
                                aheidarpour@hlfirm.com

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D</u>

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

<u>*/s/ Steven H. Koval*</u>