**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ELCINDA PERSON,<br><br>Plaintiff/<br>Counterclaim Defendant,<br><br>v.<br><br>TECHNICAL EDUCATION SERVICES, INC. d/b/a/ AVIATION INSTITUTE OF MAINTENANCE,<br><br>Defendant/<br>Counterclaim Plaintiff/<br>Third-Party Plaintiff,<br><br>v.<br><br>HIGHER ED GROWTH, LLC d/b/a INQUIR,<br><br>Third-Party Defendant. | Civil Action No. 1:19-cv-03735-SDG |

**TECHNICAL EDUCATION SERVICES, INC. D/B/A AVIATION INSTITUTE OF MAINTENANCE'S THIRD-PARTY COMPLAINT**

Defendant Technical Education Services d/b/a Aviation Institute of Maintenance ("TES"), by and through its undersigned counsel, asserts claims for indemnification as a third-party beneficiary and breach of contract against Third-

Party Defendant Higher Ed Growth LLC d/b/a Inquir ("Higher Ed" or "Third-Party Defendant").

**Parties**

1. Technical Education Services, Inc. d/b/a Aviation Institute of Maintenance is a Virginia corporation operating within the State of Georgia.

2. Mr. Person is a natural person residing in the State of Georgia.

3. Higher Ed, Growth, LLC d/b/a Inquir is an Arizona limited liability company with its primary place of business at 1702 E. McNair Dr., Tempe, AZ 85283. Higher Ed, Growth LLC d/b/a Inquir may be served with process through its registered agent for service of process, Milligan Lawless, P. C., 5050 N. 40th St., Suite 200, Phoenix, AZ 85018.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this Third-Party Complaint under 28 U.S.C.§ 1332 because it involves a dispute between citizens of different states and the amount in controversy exceeds $75,000.

5. This Court has supplemental jurisdiction over TES's Third-Party Complaint under 28 U.S.C. § 1367 because TES's common law claims are substantially related to the claims within the Court's original jurisdiction and are inextricably intertwined with the instant case.

6. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial portion of the alleged events giving rise to the Plaintiff's claims and Defendant's Third-Party Complaint occurred within this District.

**Factual Allegations**

7. On January 1, 2015, MDT Marketing ("Agency" or "MDT") entered into an Insertion Order ("Agreement") with Higher Ed ("Vendor"). Insertion Order attached hereto as Exhibit A ("Ex. A").

8. TES ("Client") is the direct beneficiary of the Agreement between the Agency and the Vendor.

9. In that Agreement, the Vendor agreed to "to indemnify MDT, its agents, its Client and their agents and to hold them harmless from and against any and all claims relating to this Vendor's breach of this Agreement or *arising out of the acts or conduct of either Vendor or its employees*." Ex. A (emphasis added).

10. The indemnification provision also provides that the "obligation will include any and costs and attorney's fees related to any litigation, administrative proceeding and appeals." Ex. A.

11. Pursuant to the Agreement, the Vendor agreed to supply internet leads to the Client. Ex. A.

12. In exchange for the provision of such leads, the Vendor was compensated for each valid Lead which it provided to the Client. *See* Ex A.

13. The Agreement defines a "Valid, billable Lead" as "a person who has completed a form requesting information about Client's school immediately prior to the Client receiving the information." Ex. A.

14. Any leads which Higher Ed provided to TES were to be submitted through the LeadConduit™ system. Ex. A.

15. Any lead which Higher Ed submitted to TES was to include the lead's first name, last name, e-mail address, phone number, street address, city, state, zip code, highest level of education completed, and program of interest.

16. However, TES had the ability to reject leads if they "were generated using advertising methods deemed not permissible by the Department of Education and any and all Federal, State and governing body guidelines, laws, and regulations." Ex. A.

17. The Agreement further provides that the Higher Ed "may only submit leads to Client through sites that are non-incentivized and *directly owned or managed by Vendor*." Ex. A (emphasis added).

18. Although the "Vendor may use direct affiliates" they may do so "at their own risk." Ex. A.

19. However, "[n]o affiliate beyond a direct affiliate of a Vendor may be used." Ex. A.

20. The Agreement provided that Higher Ed "assumes any and all responsibility for their contracted affiliated and their actions." Ex. A.

21. Pursuant to the Agreement, Higher Ed Growth agreed "to comply with all Department of Education and any and all Federal, State and governing body guidelines, laws and regulations including advertising guidelines (the 'Guidelines') in effect as of the day service is rendered by Vendor, including but not limited to the posting of advertising or acquisition of leads." Ex. A.

22. On or about February 15, 2019, Mr. Person visited the website *higherincomejobs.com*.

23. *Higherincomejobs.com* is owned and operated by Apptness Media Group ("Apptness").

24. While on the *higherincomejobs.com* website, Mr. Person completed an application to receive e-mail alerts and updates of new job listings and career opportunities from *higherincomejobs.com* and its marketing partners.

25. As a part of that application process, the Apptness website posed the following question to Mr. Person: "Are you interested in continuing your education?"

26. Directly following that question, the following statement appears:

> By selecting yes, maybe, & clicking Agree, I agree to be called or messaged for education opportunities by Universities.com, DegreeSearch, Degree Helper, Education Advisor, E College Degree, EDU First, Education Select, Education Choice, Career Coach, Career Advisor or its agents and affiliates contact me for opportunities at including through the possible use of automated technology. Consent is not required to use this service. Click Skip to see job results.

27. Mr. Person selected the response "Agree & Continue."

28. After Mr. Person completed the application, the website recorded and preserved the personal information which he provided as follows:

a. First Name: Elcinda

b. Last Name: Person

c. Telephone Number: 4043387592

d. Address: 3484 N Conley

e. City: Atlanta

f. State: GA

g. Zip Code: 30337

h. Email Address: lcperson1970@gmail.com

29. Thereafter, Apptness provided Mr. Person's educational lead information to EduFirst, LLC ("EduFirst").

30. A representative of EduFirst contacted Mr. Person, and after contacting him, EduFirst provided Mr. Person's educational lead information to Higher Ed.

31. Thereafter, Higher Ed provided Mr. Person's educational lead to TES.

32. Higher Ed submitted such lead information to TES via the LeadConduit™ software, which reflected the following information:

a. first_name: Elcinda

b. last_name: Person

c. e-mail: lcperson1970@gmail.com

d. phone_primary: 4043387592

e. address1: 3484 N Conley

f. city: Atlanta

g. state: GA

h. postal_code: 30337

i. hs_grad_year: 1989

j. education_level: High School Diploma

k. source: HigherEd_standard

l. program: Aviation Maintenance Technician

33. Higher Ed represented that Higher Ed was the "source" of this lead information.

34. Based upon this representation, TES understood that Higher Ed was the source and had originated Mr. Person's lead information

35. After Plaintiff filed the Complaint with this Court, TES learned that Mr. Person's lead information did not originate from Higher Ed as reflected in the Lead Conduit ™ software.

36. TES learned of Apptness and EduFirst's involvement in the generation of Mr. Person's lead only after Ms. Person filed the instant lawsuit.

37. On August 19, 2019, Mr. Person filed a class action lawsuit against Defendant alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* Doc. No. 1.

38. On September 17, 2019, Mr. Person filed a First Amended Complaint – Class Action ("Amended Complaint") against Defendant Training Services in which he alleged that TES had violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* Doc. No. 11 ("Am. Compl.").

39. In the Plaintiff's original First Cause of Action, Mr. Person asserted that Defendant "violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's cellular telephone number using a pre-recorded message or (b) by the fact that others made those calls on their behalf." Am. Compl., ¶ 65.

40. In the Second Cause of Action, Mr. Person alleged that Defendant placed calls "despite not having a written policy pertaining to "do not call" requests," "despite not training their personnel on the existence or use of any internal "do not call" list," and "despite not recording or honoring "do not call" requests."

**Count I: Indemnification**

41. TES restates and incorporates by reference the preceding paragraphs as if set forth fully herein.

42. The Agreement provided that Higher Ed agreed to "to indemnify MDT, its agents, its Client and their agents and to hold them harmless from and against any and all claims…arising out of the acts or conduct of either Vendor or its employees." Ex. A.

43. In the Amended Complaint, Mr. Person alleges that on several different dates TES and its agents contacted him on his cellular telephone. Am. Compl., ¶ 43.

44. Mr. Person further asserts that he "had not consented to receive Defendant's calls prior to the receipt of these calls." Am. Compl., ¶45.

45. Higher Ed provided Mr. Person's lead to TES.

46. The Complaint in this Action purports to set forth claims against TES arising out of the acts and conduct of Higher Ed and its employees.

47. Based on the provisions of the Agreement, Higher Ed has a duty to indemnify TES against such claims.

48. In the alternative, the Agreement provided that Higher Ed agreed "to indemnify MDT, its agents, its Client and their agents and to hold them harmless from and against any and all claims relating to this Vendor's breach of this Agreement." Ex. A.

49. As set forth below, Higher Ed breached the Agreement, to which TES is a third-party beneficiary.

50. As a result of that breach, Higher Ed has a duty to indemnify TES.

51. As a result of Higher Ed's actions, TES has suffered injury, including incurring significant legal costs in investigating and defending Mr. Person's lawsuit.

**Count II: Breach of Contract as to Third Party Beneficiary**

52. TES restates and incorporates by reference the preceding Paragraphs as if set forth fully herein.

53. MDT entered into an Agreement with Higher Ed, the Vendor.

54. TES, as the Client, is the direct beneficiary of the Agreement between MDT and Higher Ed.

55. That Agreement provides that Higher Ed agreed to submit leads to TES only through sites which are non-incentivized and which are directly owned or managed by Higher Ed.

56. Although the Agreement permitted Higher Ed to utilize "direct affiliates" in its performance under the Agreement, it prohibited Higher Ed from utilizing any affiliate other than a 'direct affiliate'.

57. Notwithstanding the terms of the Agreement, Higher Ed submitted a lead to TES which it had obtained from EduFirst, which EduFirst had obtained from Apptness.

58. Apptness is not a direct affiliate of Higher Ed.

59. The Agreement provides that Higher Ed "assumes any and all responsibility for their contracted affiliates and their actions." Ex. A.

60. Higher Ed breached the Agreement by utilizing a lead from a source which was not a direct affiliate.

61. Higher Ed agreed to submit only leads which complied with all Department of Education and any and all Federal, State and governing body guidelines, laws and regulations, including advertising guidelines.

62. Compliance with all Federal laws would include complying with the terms of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

63. Under the TCPA, it is unlawful for any person within the United States to make any call using any automatic telephone dialing system or an artificial or pre-recorded voice to any telephone number assigned to cellular telephone service. 47 U.S.C. § 227(b)(1)(iii).

64. Calls made to telephone numbers assigned to cellular telephone service using artificial or pre-recorded voice do not violate the TCPA if they are made with prior express consent.

65. In the Amended Complaint, Mr. Person asserts that he "had not consented to receive Defendant's calls prior to the receipt of these calls." Am. Compl., ¶ 45.

66. Mr. Person has plead that such calls are in violation of the TCPA because they included a pre-recorded message. Am. Compl., ¶44.

67. If Mr. Person prevails on any of his claims, he would only do so based on Higher Ed's breach its contract to TES, as a third-party beneficiary.

68. Due to Higher Ed's breach of contract, TES has been injured, including by incurring significant legal costs in investigating and defending the instant lawsuit.

## TES'S PRAYER FOR RELIEF

WHEREFORE, Defendant/Third-Party Plaintiff respectfully requests that the Court enter judgment against the Third-Party Defendant and award Defendant/Counterclaim-Plaintiff the following relief:

1. Enter judgment in favor of the Defendant/Third-Party Plaintiff;

2. Award Defendant/Third-Party Plaintiff monetary damages, pre-judgment interest, post-judgment interest, and all costs, expenses, and reasonable costs and attorneys' fees incurred in defense of Plaintiff's Complaint; and

3. Provide such further relief as the Court deems appropriate.

Respectfully submitted this 26 June 2020.

*(Signature on following page)*

**JACKSON LEWIS P.C**

*/s/ David A. Hughes*
David A. Hughes
Georgia Bar No. 375618
Thomas M. Lucas
Virginia Bar No. 27274
(Admitted *Pro Hac Vice*)
Milena Radovic
Virginia Bar No. 91000
(Admitted *Pro Hac Vice*)
171 17th Street, NW, Suite 1200
Atlanta, Georgia 30363
Telephone: 404-525-8200
Facsimile: 404-525-1173
david.hughes@jacksonlewis.com
thomas.lucas@jacksonlewis.com
milena.radovic@jacksonlewis.com

***Attorneys for Defendant/ Counterclaim Plaintiff/ Third-Party Plaintiff***

**CERTIFICATION**

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that this document has been prepared in 14 point, Times New Roman font.

*/s/ David A. Hughes*
David A. Hughes
Georgia Bar No. 375618

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ELCINDA PERSON,<br><br>Plaintiff/<br>Counterclaim Defendant,<br><br>v.<br><br>TECHNICAL EDUCATION SERVICES, INC. d/b/a/ AVIATION INSTITUTE OF MAINTENANCE,<br><br>Defendant/<br>Counterclaim Plaintiff/<br>Third-Party Plaintiff,<br><br>v.<br><br>HIGHER ED GROWTH, LLC d/b/a INQUIR,<br><br>Third-Party Defendant. | ) | Civil Action No. 1:19-cv-03735-SDG |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2020, I electronically filed the within and foregoing **TECHNICAL EDUCATION SERVICES, INC. D/B/A AVIATION INSTITUTE OF MAINTENANCE'S THIRD PARTY COMPLAINT** with the

Clerk of Court using the CM/ECF system, which will automatically send e-mail notification and a copy of same to the following counsel of record:

Steven H. Koval
3575 Piedmont Road
Building 15
Suite 120
Atlanta, GA 30305
shkoval@aol.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street
Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Andrew Heidarpour
1300 Pennsylvania Ave., NW
Suite 190-318
Washington, DC 20004
aheidarpour@hlfirm.com

*/s/ David A. Hughes*
David A. Hughes
Georgia Bar No. 375618