# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| ELCINDA PERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:19-cv-03735-SDG |
| v. | ) | |
| | ) | |
| TECHNICAL EDUCATION SERVICES, | ) | |
| INC., D/B/A AVIATION INSTITUTE | ) | |
| OF MAINTENANCE, | ) | |
| | ) | |
| Defendants/Counterclaim Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HIGHER ED GROWTH, LLC D/B/A | ) | |
| INQUIR | ) | |
| | ) | |
| Third Party Defendant. | ) | |

## THIRD PARTY DEFENDANT HIGHER ED GROWTH, LLC, D/B/A INQUIR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c), Third Party Defendant Higher Ed Growth, LLC, d/b/a Inquir (hereinafter, "Higher Ed"), by and through undersigned counsel, file this Motion for Summary Judgment (the "Motion") against Defendant and Counterclaim Plaintiff, Technical Education Services, Inc., d/b/a Aviation Institute of Maintenance (hereinafter, "AIM"). In support of this Motion, Higher Ed submits the following memorandum of law.

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS**………………………………………………………i

**INDEX OF AUTHORITIES**……………………………………….....ii, iii

**I.    INTRODUCTION**………………………..…………………..……….2

**II.    LAW AND ARGUMENT**………………………….………………3

      **A.    Standard of Review**……..…………….……………………...3

      **B.    Higher Ed Cannot Be Liable for Violations of the Telephone Consumer Protection Act**……..……………….…...…………..3

      **C.    AIM's Claim for Indemnification Must Fail**………..………..…5

          1.    *The Indemnification Provision Should be Strictly Construed Against AIM*……………………………………..…..7

          2.    *The Duty to Indemnify Was Not Triggered*……………….……9

**III.    CONCLUSION**……………………………………………………12

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C. AND 7.1.D**….….…..13

**CERTIFICATE OF SERVICE**………………………………………………14

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 257 (1986)..................................................................................4

*Batson-Cook Co. v. Ga. Marble Setting Co.,*
    112 Ga. App. 226, 230, 144 S.E.2d 547, 550 (1965)………………………….8

*Campbell-Ewald Co. v. Gomez,*
    136 S. Ct. 663, 667 (2016)……………………………………………………4

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 323 (1986)……………………………...……………………4

*CSXTransp., Inc. v. Gen. Mills, Inc.,*
    No. 1:14-CV-201-TWT, 2015 U.S. Dist. LEXIS 12874, at *9 (N.D. Ga. Feb. 3, 2015)………………………………………………………………………..8

*Firmani v. Dar-Court Builders, LLC,*
    339 Ga. App. 413, 425, 793 S.E.2d 596, 605 (2016)……………..……….7, 10

*Graphic Arts Mut. Ins. Co. v. Essex Ins. Co.,*
    465 F. Supp. 2d 1290, 1296 (N.D. Ga. 2006)…………………….…7, 10

*Hickson Corp. v. N. Crossarm Co.,*
    357 F.3d 1256, 1259 (11th Cir. 2004)....…………………………………..4

*Park Pride of Atlanta v. City of Atlanta,*
    246 Ga. App. 689, 691, 541 S.E.2d 687, 689 (2000)……………………….8, 9

*Ryder Integrated Logistics Inc. v. BellSouth Telecommunications, Inc.,*
    281 Ga. 736, 737, 642 S.E.2d 695 (2007)……………………………….…..8

*Scarboro Enterprises v. Hirsh,*
    119 Ga. App. 866, 870 (2) (169 S.E.2d 182) (1969)…………………...9

*Westinghouse Elec. Corp. v. Williams,*
    183 Ga. App. 845, 846, 360 S.E.2d 411, 413 (1987)…………………………7

**Laws and Statutes**

Telephone Consumer Protection Act, 47 U.S.C. §227………2, 3, 4, 5, 6, 7, 8, 11, 12

**Case Law and Other Authorities**

Fed. R. Civ. P. 56(c)……………………………………………………….……3

## I.   <u>INTRODUCTION</u>

On August 19, 2019, Plaintiff Elcinda Person filed the instant matter, alleging that AIM violated the Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq.* (the "TCPA") by contacting him on at least 17 different days in May and June 2019.[1] Plaintiff alleges that he informed AIM he did not want to receive such calls, and even had his Counsel inform AIM that Plaintiff did not consent to receiving such calls.[2] Nevertheless, Plaintiff continued to receive such calls from AIM, even after AIM was informed by Plaintiff and his Counsel to stop.

On June 26, 2020, almost a year into the litigation, AIM filed a third-party Complaint against Higher Ed alleging that: (1) Higher Ed was required to indemnify AIM against Plaintiff's TCPA claims, and (2) that Higher Ed breached a contract that AIM was a third-party beneficiary of by Higher Ed's use of an indirect affiliate to generate leads.

However, AIM's Complaint is nothing more than a meritless and desperate attempt to shift blame and loss. Neither logic, nor law, requires Higher Ed to indemnify AIM for AIM's wrongdoing. In short, when Plaintiff's information was passed from Higher Ed to AIM, there was clear, unequivocal, and on-going recorded verbal consent specifically for AIM to contact Plaintiff. Indeed, Plaintiff actually

---

[1] Statement of Undisputed Material Facts, ¶ 27.
[2] Statement of Undisputed Material Facts, ¶ 28.

communicated with, and requested future communications and information from, AIM. Not only does such consent defeat any allegation that Higher Ed may have violated the TCPA, but it also makes the allegation that Higher Ed used an indirect affiliate irrelevant, since such indirect affiliate was not the cause of any of Plaintiff's claims.

Plaintiff alleges that at some point afterward, Plaintiff, both directly and through counsel revoked that consent directly to AIM. Despite that, AIM continued to contact Plaintiff. Plaintiff has not alleged, nor is there any evidence that Plaintiff received any automated or pre-recorded call from or on behalf of Higher Ed in violation of the TCPA.  Now, AIM wants Higher Ed to pay for its negligence in contacting Plaintiff after Plaintiff revoked consent to be contacted. Unfortunately for AIM, that is not what the law requires, and Higher Ed is entitled to summary judgment as to AIM's Third-Party complaint.

## II.   <u>LAW AND ARGUMENT</u>

### A. Standard Of Review

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[3] "The moving party bears the initial responsibility of informing the … court of the basis for its

---

[3] Fed. R. Civ. P. 56(c).

motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact."[4] Upon such a showing, the burden of proof shifts to the nonmoving party to point to the evidence of record, affidavits, and pleadings in order to present affirmative evidence to show that a genuine issue of material fact does exist.[5] In this case, there are no genuine issues of material fact with respect to AIM's liability claim against Higher Ed, primarily since AIM is unable to point to any actions of Higher Ed which, even when viewed in a light most favorable to AIM, could be seen as being the cause of Plaintiff's claims against AIM.

### B.    Higher Ed Cannot Be Liable for Violations of the Telephone Consumer Protection Act

The Telephone Consumer Protection Act, 47 U.S.C. §227(a)(1) prohibits the use of an automatic telephone dialing system to call or text any cellular phone without the prior consent of the recipient.[6]  No allegations have been made by either Plaintiff or Third Party Plaintiff that Higher Ed – either directly or through its affiliate, EDU First – made automated calls or sent automated texts to Plaintiff's

---

[4] *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259 (11th Cir. 2004) *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (internal quotations omitted).
[5] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986).
[6] See §227(a)(1); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

cellular phone without the prior consent of the recipient, here – Mr. Person. The TCPA allegations against AIM are that AIM contacted the Plaintiff 17 times using automated technology without Mr. Person's consent.[7] Here, Higher Ed, through EDU First, obtained Mr. Person's consent to be called by AIM, including via text or to his cell phone with automated technology.[8] Once Mr. Person's information was uploaded to the MDT website, neither MDT nor Higher Ed had any contact with Mr. Person.[9] Thus, at the time the lead was generated and uploaded to the MDT system, prior express consent to be called by AIM via auto-dialer or contacted via text message clearly existed.

Based upon the plain language of the TCPA statute, there can be no liability for violations of the TCPA as against Higher Ed, either vicariously or directly. Whether and when Mr. Person revoked the consent given to EDU First is a question of fact that does not impact this motion for summary judgment, since such revocation would have occurred **<u>after</u>** Higher Ed obtained his consent and uploaded the lead properly to the MDT site. Further, as discussed above, there was at least **<u>some</u>** time period where Plaintiff had an open dialogue with AIM and was continuing to request contact and information from AIM.[10] Thus, at all times relevant to both the

---

[7] Statement of Undisputed Material Facts, ¶ 27.
[8] Statement of Undisputed Material Facts, ¶ 16-17.
[9] Statement of Undisputed Material Facts, ¶ 12-13, 19.
[10] Statement of Undisputed Material Facts, ¶ 22-25.

Complaint and the Third-party Complaint, Higher Ed was in compliance with the TCPA.

Moreover, with respect to the instant motion, the timing of these calls (they were not dated as part of AIM's production) is irrelevant. Nor is the fact that Plaintiff may have later revoked consent – either through himself or though counsel – to be contacted by AIM. Instead, the significance of these calls is that, as of the time Plaintiff's information was provided to AIM, there was clear, unequivocal, and on-going consent from Plaintiff to be contacted by AIM.[11] Thus, at the time Plaintiff's information was provided to AIM, Higher Ed was in compliance with the TCPA provisions of its contract with MDT and the fact that an indirect affiliate may have been initially used to generate the lead became moot.

## C.    AIM's Claim for Indemnification Must Fail

Similarly, AIM's purported or actual violations of the TCPA do not support AIM's claim for indemnification against Higher Ed. AIM claims that Higher Ed breached the MDT contract by using an indirect affiliate to generate leads, including Mr. Person.[12] However, the underlying liability for a TCPA violation by AIM is not related to Higher Ed's use of an indirect affiliate, but instead, is due to AIM's own actions in contacting Mr. Person after he revoked consent to be called.

---

[11] Statement of Undisputed Material Facts, ¶ 17.
[12] Statement of Undisputed Material Facts, ¶ 29.

The indemnification clause at issue here only requires indemnification for claims **related to a breach** or for the negligent actions of Higher Ed.[13] Plaintiff alleges that AIM violated the TCPA by contacting him after he revoked consent to be contacted.[14] That an "indirect affiliate" may have been utilized in the generation of Plaintiff's lead is irrelevant since there was clear, unequivocal, and on-going consent from Plaintiff to be contacted by AIM at the time his information was uploaded to the MDT portal. In other words, the claims against AIM in this case are not related to the alleged breach by Higher Ed in utilizing an indirect affiliate to generate Mr. Person's lead.  Nor are the underlying claims based on the negligence of Higher Ed.

1.   *The Indemnification Provision Should be Strictly Construed Against AIM*

In Georgia, the words of a contract of indemnification must be construed strictly against the indemnitee.[15] Georgia similarly requires that for an indemnity provision to cover the acts or omissions of another, the language of the provision must clearly and unequivocally state such an intention.[16] Furthermore, "every

---

[13] Statement of Undisputed Material Facts, ¶4.
[14] Statement of Undisputed Material Facts, ¶ 28.
[15] *Graphic Arts Mut. Ins. Co. v. Essex Ins. Co.*, 465 F. Supp. 2d 1290, 1296 (N.D. Ga. 2006) citing *See, Westinghouse Elec. Corp. v. Williams*, 183 Ga. App. 845, 846, 360 S.E.2d 411, 413 (1987).
[16] See, *Firmani v. Dar-Court Builders, LLC*, 339 Ga. App. 413, 425, 793 S.E.2d 596, 605 (2016) (finding that the defendant did not have a duty to indemnify plaintiff for

presumption is against such intention."[17] According to Georgia courts, the policy behind this interpretive rule "is to assure that people exercise due care in their activities for fear of liability, rather than act carelessly in the knowledge that indemnity insurance will relieve them."[18] In addition, "[p]ublic policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault."[19]

In this case, the indemnification language makes no mention of indemnification for TCPA violations but simply provides for indemnification for actions "related to a breach" or because of the negligence of Higher Ed.[20] In other words, the indemnification provision does not specify Higher Ed's obligations to indemnify AIM for AIM's own independent actions in violating the TCPA. Georgia law requires that the indemnity provision at issue be read and construed against AIM as both the indemnitee and because the provision was drafted for the benefit or on

---

breach of fiduciary duty, where the provision clearly did not state an intention to cover such acts).

[17] *Batson-Cook Co. v. Ga. Marble Setting Co.*, 112 Ga. App. 226, 230, 144 S.E.2d 547, 550 (1965).

[18] *CSX Transp., Inc. v. Gen. Mills, Inc.*, No. 1:14-CV-201-TWT, 2015 U.S. Dist. LEXIS 12874, at *9 (N.D. Ga. Feb. 3, 2015) quoting *Park Pride of Atlanta v. City of Atlanta*, 246 Ga. App. 689, 691, 541 S.E.2d 687, 689 (2000).

[19] *Id.* at *9 quoting *Ryder Integrated Logistics Inc. v. BellSouth Telecommunications, Inc.*, 281 Ga. 736, 737, 642 S.E.2d 695 (2007).

[20] Statement of Undisputed Material Facts, ¶ 4.

behalf of AIM. When an indemnity agreement is ambiguous, such ambiguity must be construed against the drafter.[21]

Based upon the law in Georgia relating to the application of indemnification provisions, and the undisputed facts relating to Higher Ed obtaining prior express consent from Mr. Person to be contacted by AIM, – summary judgment is appropriate in favor of Higher Ed and as against AIM.

2.    *The Duty to Indemnify Was Not Triggered*

Additionally, the duty to indemnify was never triggered in this instance. General language that an indemnity provision covers, "against any and all claims" is not sufficient to trigger a duty to indemnify another's negligent acts or omissions.[22] In *Park Pride,* a park beautification volunteer was killed when a dump truck belonging to the City and being operated by a City employee rolled onto her and crushed her. The City of Atlanta sought indemnification against Park Pride, since the contract between the entities required Park Pride to "protect and hold harmless the City…from any and all claims…" There was no suggestion that any of the claims in the case arose from any actions of Park Pride or anyone employed by Park Pride.

---

[21] *Park Pride of Atlanta v. City of Atlanta*, 246 Ga. App. 689, 691, 541 S.E.2d 687, 689 (2000) citing *Scarboro Enterprises v. Hirsh*, 119 Ga. App. 866, 870 (2) (169 S.E.2d 182) (1969).
[22] *Park Pride of Atlanta v. City of Atlanta*, 246 Ga. App. 689, 691, 541 S.E.2d 687, 689 (2000).

Ultimately, the court found that the indemnity provision of the contract was not triggered because the sweeping language of 'any and all claims', "is bereft of any express or explicit statement about coverage for the City's own negligent acts or omissions done by the City's own employees."[23] Because the indemnity provision failed to expressly, plainly, clearly, and unequivocally state that Park Pride would indemnify Atlanta from the city's own negligent acts, they had no obligation to indemnify Atlanta for its settlement of the underlying lawsuit.[24]

As indemnity provisions are strictly construed against the indemnitee, where a suit or claim falls outside such a provision, the duty to indemnify is not triggered.[25] In *Graphic Arts,* the Court determined that the underlying lawsuit was outside of the view of the indemnity provision, as the damages and claimant were not the type intended by the language of the provision.[26] As such, the Court held that the defendant did not have a duty to indemnify the plaintiff as a matter of law.[27]

A plain reading of the language indicates that the indemnity provision covers the claims caused by the acts and conduct of Higher Ed or its employees, **not** the

---

[23] *Id.*

[24] *Id.* at **7. See also, *Firmani v. Dar-Court Builders, LLC*, 339 Ga. App. 413, 425, 793 S.E.2d 596, 605 (2016) (holding that "against any all liabilities" was insufficient language to trigger the duty to indemnify for the wrongful actions of the indemnitee, even if damages were caused by "mere negligence.").

[25] *Graphic Arts Mut. Ins. Co. v. Essex Ins. Co.*, 465 F. Supp. 2d 1290, 1296 (N.D. Ga. 2006).

[26] *Id.* at 15.

[27] *Id.*

independent or negligent actions and conduct of AIM alone. The underlying TCPA suit against AIM does not trigger Higher Ed's duty to indemnify as outlined by the plain language of the indemnity provision. In order to find such a duty to indemnify AIM's negligent actions, the language expressing such would need to be clear, express, and unequivocal, a requirement that is simply not met here.

Furthermore, the provision's broad coverage "against all claims" is not sufficient to demonstrate the intent necessary to require Higher Ed to indemnify AIM for the underlying cause of action. This broad language lacks the clear, plain, express and unequivocal language to demonstrate that Higher Ed intended to indemnify AIM for its own wrongful acts or negligent conduct. To find such a duty absent the required language would go against the public policy of Georgia and the long line of Georgia precedent supporting such public policy.

Higher Ed's duty to indemnify is not triggered by AIM's alleged conduct in violating the TCPA. The provision itself should be construed against AIM as they are the ones seeking indemnification. The general "all claims" language is furthermore insufficient to demonstrate the intent required by the public policy of Georgia. Finally, the claim clearly falls outside of the intended coverage of the provision, as the underlying action is a result of AIM's conduct, and not Higher Ed's. As such, Higher Ed's Motion for Summary Judgment should be granted.

### III.   CONCLUSION

For whatever reason, AIM allegedly continued to contact Plaintiff after Plaintiff revoked his consent to be contacted. Caught in a violation of the TCPA, AIM now seeks to shift that blame to Higher Ed. However, Plaintiff's claims are based on the sole negligence and wrongful conduct of AIM and do not in any way relate to Higher Ed's alleged use of an indirect affiliate for the initial generation of Plaintiff's "lead". Indeed, it is indisputable that, **as of the time Plaintiff's information was provided to AIM, there was clear, unequivocal, and on-going consent from Plaintiff to be contacted by AIM**. Under Georgia law, AIM's claims against Higher Ed fail as a matter of law.

Based on the foregoing, Third Party Defendant Higher Ed through undersigned counsel, respectfully moves this Court to grant summary judgment in its favor against AIM.

Respectfully submitted,

Dated:  December 3, 2020

*/s/ Karen S. Hockstad (pro hac vice)*
Karen S. Hockstad
DINSMORE & SHOHL, LLP
191 W. Nationwide Blvd., Suite 300
Columbus, OH 43215
Telephone:  (614) 628-6880
Fax:  (614) 628-6890
Karen.hockstad@dinsmore.com

Tucker C. Motta
Georgia Bar No. 838425
DINSMORE & SHOHL, LLP
1100 Peachtree Street, N.E., Suite 950
Atlanta, GA 30309
Telephone:  (470) 300-5353
Tucker.motta@dinsmore.com

J. Travis Mihelick (*pro hac vice*)
DINSMORE & SHOHL, LLP
900 Wilshire Drive, Suite 300
Troy, MI 48084
Telephone:  (248) 647-6000
Fax:  (248) 647-5210
Travis.mihelick@dinsmore.com

*Counsel for Third Party Defendant
Higher Ed Growth, LLC, D/B/A Inquir*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C AND 7.1.D

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman Font, approved by the Court in L.R. 5.1.C.

*/s/ Karen S. Hockstad* (*pro hac vice*)
Karen S. Hockstad

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Karen S. Hockstad (pro hac vice)*
Karen S. Hockstad