### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ELCINDA PERSON,

      Plaintiff,

          v.

TECHNICAL EDUCATION SERVICES, INC.
d/b/a AVIATION INSTITUTE OF
MAINTENANCE,

      Defendant,

          v.

HIGHER ED GROWTH, LLC d/b/a INQUIR

      Third-Party Defendant.

Civil Action No.
1:19-cv-03735-SDG

### OPINION AND ORDER

This matter is before the Court on a motion to dismiss filed by Defendant Technical Education Services, Inc. d/b/a Aviation Institute of Maintenance (Aviation Institute) [ECF 61]; a motion to strike filed by Aviation Institute [ECF 65]; and a motion for summary judgment filed by Third-Party Defendant Higher Ed Growth, LLC d/b/a Inquir (Higher Ed) [ECF 71]. For the following reasons, Aviation Institute's motions are **DENIED** and Higher Ed's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

Plaintiff Elcinda Person brings this putative class action against Aviation Institute seeking to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act (TCPA), codified at 47 U.S.C. § 227, *et seq*. Count I alleges a violation of the TCPA's prohibition on automated telemarketing calls under 47 U.S.C. § 227(b)(1)(A)(iii). Count II contends Aviation Institute violated the TCPA's internal "do-not-call" provisions under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

On May 15, 2020, the Court denied Aviation Institute's partial motion to dismiss Count II of the Amended Complaint.[1] The Court subsequently denied Aviation Institute's motion for an interlocutory appeal of that Order on June 22.[2] On November 5, Aviation Institute filed its second motion to dismiss.[3] That motion argues that the entire Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction in the wake of the Supreme Court's decision in *Barr v. American*

---

[1]     ECF 26.

[2]     ECF 38.

[3]     ECF 61.

*Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) (*AAPC*).[4]
On November 12, Person filed a notice purporting to alert the United States that
Aviation Institute's motion to dismiss challenges the constitutionality of the
TCPA.[5] Believing such notice to be superfluous, Aviation Institute filed a motion
to strike on November 25.[6] On April 23, 2021, the United States filed its notice of
intervention and brief opposing Aviation Institute's motion to dismiss.[7]

On June 26, 2020, Aviation Institute filed a Third-Party Complaint against
Higher Ed, asserting claims for indemnification (Count I) and breach of contract
(Count II).[8] According to Aviation Institute, Higher Ed owes it a duty of
indemnification as the direct beneficiary of a contract executed between Higher Ed
and non-party MDT Marketing (MDT) (hereafter, the Insertion Order).

---

[4]   ECF 61.

[5]   ECF 64.

[6]   ECF 65.

[7]   ECF 99. As the United States notes, given the nature of Aviation Institute's
motion to dismiss, it possesses a right to intervene and defend the
constitutionality of the TCPA. *See* 28 U.S.C. § 2403(a); Fed. R. Civ. P. 24.
Therefore, Aviation Institute's motion to strike is without basis and **DENIED**.

[8]   ECF 39.

On December 3, Higher Ed filed its motion for summary judgment on Aviation Institute's third-party claims.[9]

## II.   DISCUSSION

Since Aviation Institute challenges the Court's subject matter jurisdiction, its motion to dismiss must be addressed first. *See Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues."). Because the Court finds that motion unavailing, it will then proceed to consider Higher Ed's motion for summary judgment.

### a.   Aviation Institute's Motion to Dismiss

### i.   Legal Standard

Motions to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1) come in two forms: "facial" and "factual" challenges. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). The Eleventh Circuit has explained the distinction between the two:

> A "facial attack" on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. "Factual attacks," on the other hand, challenge the existence of subject matter

---

[9]   ECF 71.

> jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (brackets and citations omitted).

Aviation Institute lodges a facial attack to the Court's subject matter jurisdiction. Accordingly, for the purposes of this motion to dismiss, the Court looks only to the Amended Complaint and assumes the truth of Person's well-pleaded allegations. *Lawrence*, 919 F.2d at 1529.

> ### ii.   Analysis

"The [TCPA] was enacted in 1991 because, as Congress put it, many consumers were outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019) (quoting *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012); Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394)) (brackets and punctuation omitted). In its original form, "the TCPA prohibited almost all robocalls to cell phones." *AAPC*, 140 S. Ct. at 2344. In 2015, Congress amended the TCPA to permit robocalls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (amending 47 U.S.C. § 227(b)(1)(A)(iii)).

On July 6, 2020, the Supreme Court decided *AAPC*. In a fractured decision in which there was no majority opinion, six Justices concluded that the government-debt exception violated the First Amendment and seven Justices determined that, pursuant to traditional severability principles, the government-debt exception did not invalidate the entire TCPA and should be severed from the remainder of that statute. 140 S. Ct. at 2343–44. *See also id.* at 3256 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute."). Purporting to rely on *AAPC*, Aviation Institute argues the unconstitutionality of the government-debt exception renders the entire TCPA invalid and unenforceable from November 2, 2015—the date Congress enacted the exception—until July 6, 2020—the date the Supreme Court issued *AAPC*. Put another way, Aviation Institute posits that *AAPC* created a sort of regulatory "donut hole" during which time the entire TCPA cannot be enforced. *See Ex Parte Siebold*, 100 U.S. 371, 376 (1879) ("An unconstitutional law is void, and is as no law."). Since Person's claims are premised on alleged violations that all occurred during this time period, avers Aviation Institute, the Court lacks subject matter jurisdiction over the case.

The Eleventh Circuit has not addressed this question. Neither has any other federal appellate court. But this Court need not break new ground. A plethora of district courts—including at least three courts in the Eleventh Circuit—have reached the issue. And the overwhelming majority of them have come to the same conclusion: the TCPA (sans the government-debt exception) remains fully enforceable as to robocalls made between November 2, 2015 and July 6, 2020. *E.g., Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 0:20-cv-60638-WPD, 2021 WL 612212, at *2 (S.D. Fla. Jan. 19, 2021) ("[I]t appears that the clear majority of cases to consider this issue have allowed parties to continue to bring § 227(b) claims post-*AAPC*.") (collecting cases). *See also* ECF 99-1, at 12–14 (collecting cases). Conversely, only three district courts have agreed with Aviation Institute that severability is not retroactive and the government-debt exception rendered the entire TCPA unconstitutional during its effective period. *Cunningham v. Matrix Fin. Servs., LLC*, No. 4:19-cv-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021);

*Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020).[10]

The Court agrees with the majority approach. As a threshold matter, Person asserts two claims for violation of the TCPA: Count I under 47 U.S.C. § 227(b)(1)(A)(iii) and Count II under 47 U.S.C. § 227(c)(5). *AAPC* is not relevant to Count II. Congress has never amended § 227(c)(5) to carve out an exception permitting the government to make robocalls to collect a debt. As recently summarized by one district court:

> [T]he *AAPC* decision itself indicates that plaintiffs challenged only a limited provision within the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) . . . the 2015 amendment at issue in *AAPC* had no impact on Section 227(c). Thus, Section 227(c) remained fully operative as a law during the intervening years between the 2015 amendment and the Supreme Court's decision. The 2015 amendment having been found unconstitutional, has no bearing on Section 227(c), which remains valid.

---

[10]  A fourth district court—*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-OC-30PRL, 2020 WL 7346536, (M.D. Fla. Dec. 11, 2020)— initially agreed with Aviation Institute's position and found that it lacked subject matter jurisdiction. However, that court expressly reversed itself in a later opinion on the same issue. *Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*.").

*Johansen v. Loandepot.com LLC*, No. 8:20-cv-00919-DOC-JDE, 2021 WL 669329, at *3–4 (C.D. Cal. Jan. 31, 2021) (citation and punctuation omitted). Indeed, this limited approach comports with the instructions articulated in *AAPC*: that courts "should refrain from invalidating more of the statute than is necessary." 140 S. Ct. at 2350 (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984)). Accordingly, there is no basis in either *AAPC* or the government-debt exception for Aviation Institute to challenge the constitutionality of § 227(c)(5).

That leaves § 227(b)(1)(A)(iii). Like the substantially similar arguments considered and rejected by other district courts, Aviation Institute's contentions here are largely counter to the *AAPC* decision itself. For example, the plurality applied well-settled severability principles, excised the government-debt exception from the remainder of the statute, and expressly "disagree[d] with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional." 140 S. Ct. at 2349. In essence, the Supreme Court considered and rejected the very theory advanced by Aviation Institute. In this Court's view, that is enough to deny the motion to dismiss. *See Shen v. Tricolor Cal. Auto Grp., LLC*, No. CV 20-7419 PA (AGRX), 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020) ("This Court, like several others to have considered the issue, declines to adopt an

analysis that appears to be at odds with the views of a majority of the Supreme Court's Justices.").

Furthermore, in an opinion announcing the judgment of the Court and joined by Chief Justice Roberts and Justice Alito, Justice Kavanaugh provided a clear answer to the precise question raised by Aviation Institute:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*Id.* at n.12 (emphasis added).[11]

The minority of district courts that have held § 227(b)(1)(A)(iii) to be unenforceable during the relevant time period dismissed this footnote as non-

---

[11] Two Justices disagreed with the entirety of the plurality opinion's reasoning regarding severability; the four Justices who concurred with the plurality opinion took no position on this specific retroactivity issue. *See Shen*, 2020 WL 7705888, at *4 ("Because Justices Sotomayor, Breyer, Ginsburg, and Kagan joined in the judgment on severability, they did not expressly join the portion of Justice Kavanaugh's opinion containing footnote 12. As such, Justice Kavanaugh's resolution of the issue may not be binding on this Court, but it is persuasive.").

binding dicta lacking precedential force. *Lindenbaum*, 2020 WL 6361915, at *5; *Creasy*, 489 F. Supp. 3d at 503. Although that may be an accurate description, it also ignores the strong persuasive value of footnote 12. *See F.E.B. Corp. v. United States*, 818 F.3d 681, 690 n.10 (11th Cir. 2016) ("[T]here is dicta and then there is Supreme Court dicta. We have consistently recognized that dicta from the Supreme Court is not something to be lightly cast aside, but rather is of considerable persuasive value.") (citations and punctuation omitted).

In any event, the Court respectfully disagrees with the reasoning of *Cunningham*, *Lindenbaum*, and *Creasy*. Those decisions relied on a dissenting opinion in *AAPC* to create a distinction that, in this Court's view, was unintended by the plurality opinion. *See Moody v. Synchrony Bank*, No. 5:20-CV-61 (MTT), 2021 WL 1153036, at *6 (M.D. Ga. Mar. 26, 2021) (disagreeing with *Creasy* and stating that "[n]one of the opinions in *AAPC* even hinted that the TCPA's robocall restriction should be wholly invalid between 2015 and 2020, but valid in part after the Court's decision."); *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-00510-AJB-MSB, 2021 WL 948805, at *8 (S.D. Cal. Mar. 12, 2021) ("Even if the Court concluded that Justice Kavanaugh's footnote is dicta, this Court is nevertheless persuaded by this unambiguous announcement that the *AAPC* decision is not meant to disturb the entirety of the TPCA. Recognizing the preeminence of this nation's highest court,

this Court cannot ignore such a clear statement, whether it be considered dicta or a holding.").

To reiterate, the plurality clearly articulated that "the remainder of the robocall restriction [ ] function[ed] independently and fully operate[d] as a law for 20-plus years before the government-debt exception was added in 2015." *AAPC*, 140 S. Ct. at 2353. Under well-established principles, the unconstitutionality of a subsequent amendment has no effect on the original portions of the statute that represented a valid legislative enactment. *Id.* ("[A]n unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute.") (quoting *Frost v. Corp. Comm'n*, 278 U.S. 515, 526–27 (1929)). *See also Eberle v. Michigan*, 232 U.S. 700, 705 (1914); *Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *4 (C.D. Cal. Dec. 21, 2020). Therefore, the Court finds the remainder of the TCPA valid and enforceable. The Court retains subject matter jurisdiction and Aviation Institute's motion to dismiss is **DENIED**.

### b.    Higher Ed's Motion for Summary Judgment

Aviation Institute asserts two third-party claims against Higher Ed: one for indemnification and the other for breach of contract. Higher Ed contends it is entitled to summary judgment on both causes of action.

### i.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-movant must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. A fact is considered "material" only if it may "affect the outcome of the suit under the governing law." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248) (punctuation omitted).

In opposing a motion for summary judgment, the non-movant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586–87 (1986). If the non-movant relies on evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). *See also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177 (11th Cir. 2020) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). The Court's role, however, is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Sears*, 922 F.3d at 1205 (citing *Anderson*, 477 U.S. at 249). The Court must "view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Newcomb v. Spring Creek Cooler Inc.*, 926 F.3d 709, 713 (11th Cir. 2019). *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson*, 477 U.S. at 255).

### ii. Analysis

The relevant facts underlying Higher Ed's motion are largely undisputed or otherwise unrefuted. On January 1, 2015, Higher Ed contracted with MDT by executing the Insertion Order to provide educational "leads" to MDT's customers,

one of which is Aviation Institute.[12] The Insertion Order contained an indemnification provision that, in relevant part, read:

> Vendor [*i.e.*, Higher Ed] agrees to indemnify MDT, its agents, its Client and their agents and to hold them harmless from and against any and all claims related to this Vendor's breach of this Agreement or arising out of the acts or conduct of either Vendor or its employees.[13]

Higher Ed also agreed "to comply with all . . . Federal, State, and governing body guidelines, laws and regulations including advertising guidelines [ ] in effect as of the day that service is rendered by vendor."[14] As part of its lead generation service, the Insertion Order permitted Higher Ed to coordinate with direct affiliates.[15] Accordingly, Higher Ed contracted with EduFirst, LLC (EduFirst).[16] EduFirst initially contacted a potential lead through a live, person-to-person phone call.[17] That EduFirst representative read a TCPA-compliant script to the potential lead and obtained his or her verbal consent to be further contacted by

---

[12]   ECF 87-1, ¶ 1; ECF 94, ¶ 1.

[13]   ECF 39-1, at 3.

[14]   *Id.*

[15]   *Id.* ¶ 5.

[16]   *Id.* ¶ 6.

[17]   *Id.* ¶¶ 8–9.

other entities.[18] Higher Ed reviewed a recording of that call, then uploaded the lead's information into an online portal maintained by MDT.[19] Aviation Institute subsequently accessed that information and contacted the lead.[20]

In this case, on or about February 15, 2019, Person visited the website *higherincomejobs.com* and requested additional information regarding educational and career opportunities.[21] That website is owned and operated by Apptness Media Group (Apptness).[22] Apptness, in turn, provided Person's information to EduFirst.[23] EduFirst first contacted Person on May 15, 2019.[24] During this call, Person gave verbal consent to be contacted by Aviation Institute.[25] EduFirst then transferred Person's information to Higher Ed, which provided it to Aviation Institute through the MDT portal.[26] Person subsequently received and engaged in

---

[18]   *Id*. ¶¶ 9–10.

[19]   *Id*. ¶ 10.

[20]   *Id*. ¶ 11.

[21]   *Id*. ¶ 15; ECF 94, ¶¶ 8, 10.

[22]   ECF 94, ¶ 11.

[23]   *Id*. ¶ 12.

[24]   ECF 87-1, ¶ 15.

[25]   *Id*. ¶ 17.

[26]   *Id*. ¶ 19.

calls with Aviation Institute or an affiliate to discuss various educational opportunities.[27]

In the Third-Party Complaint, Aviation Institute alleges Higher Ed owed it a duty of indemnification as a third-party beneficiary to the Insertion Order for any alleged violation of the TCPA.[28] Aviation Institute also alleges Higher Ed breached the Insertion Order by using an indirect affiliate—Apptness—to generate leads.

The scope of an indemnity provision is a question of law. *Westinghouse Elec. Corp. v. Williams*, 183 Ga. App. 845, 846 (1987). Georgia courts interpret indemnity provisions using the same rules that govern all other types of contracts. *Auto-Owners Ins. Co. v. CW Masonry, Inc.*, 350 Ga. App. 401, 406 (2019) (citing *Anderson v. U.S. Fid. & Guar. Co.*, 267 Ga. App. 624, 627 (2004)). The cardinal rule of contract interpretation is to ascertain the intent of the parties. O.C.G.A. § 13-2-3.

The language of an indemnity provision "must be construed strictly against the indemnitee and every presumption is against an intention to indemnify." *Firmani v. Dar-Ct. Builders, LLC*, 339 Ga. App. 413, 425 (2016) (punctuation

---

[27] *Id*. ¶¶ 21–22, 24–25.

[28] For purposes of this Order, the Court will assume Aviation Institute constituted a third-party beneficiary to the Insertion Order.

omitted). *See also Graphic Arts Mut. Ins. Co. v. Essex Ins. Co.*, 465 F. Supp. 2d 1290, 1296 (N.D. Ga. 2006). The well-established rule is that "contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered." *Ryder Integrated Logistics Inc. v. BellSouth Telecomms., Inc.*, 281 Ga. 736, 737–38 (2007) ("In the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence. Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language."). This is because "[p]ublic policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault." *Id*. at 737.

Aviation Institute alleges Higher Ed owes a duty to indemnify it for any potential liability stemming from Person's TCPA claims. Higher Ed argues it is entitled to summary judgment on this claim because: (1) there is no evidence that it, or any of its affiliates, violated the TCPA, and (2) it does not owe a duty to indemnify Aviation Institute for the latter's own independent alleged violations of the TCPA.

First, construing the record in a light most favorable to Aviation Institute, no reasonable factfinder could conclude that Higher Ed or one of its affiliates

violated the TCPA. There is no evidence that Higher Ed, EduFirst, or Apptness contacted Person's cell phone using an automated dialing system without first obtaining Person's consent. The record is entirely apposite; Person voluntarily contacted Apptness through *higherincomejobs.com* and EduFirst obtained Person's express, verbal consent to be further contacted during the initial call. Although there is a factual dispute over whether Higher Ed directly contacted Person, this does not create a triable issue of fact. Even assuming Higher Ed did so, there is no evidence that Higher Ed violated the TCPA during this contact, if any. And contrary to Aviation Institute's characterizations, based on the undisputed record the Court concludes that the issue of Higher Ed's potential TCPA liability is ripe for resolution on this motion for summary judgment. *See Lucoff v. Navient Sols., LLC*, 981 F.3d 1299, 1306 (11th Cir. 2020) ("TCPA consent issues are appropriate for summary judgment . . . when the underlying facts are not disputed.").

The true disputed issues of fact in this case relate to whether, when, and how Person revoked his consent to be contacted by Aviation Institute after Higher Ed provided the lead. *E.g., Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1276 (11th Cir. 2017); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014). Those issues cannot be resolved on this motion for summary judgment. But they are only relevant to Aviation Institute's potential liability, not Higher Ed's

role in the lead-generation process. Again, the undisputed record is clear that Higher Ed obtained Person's express, verbal consent to be contacted at the time it transmitted the lead to Aviation Institute. Whatever Aviation Institute and Person did or said afterwards is irrelevant to Higher Ed's potential liability. The plain language of the Insertion Order is unambiguous: Higher Ed's duty to indemnify extends to "any and all claims relating to this Vendor's [Higher Ed's] breach of this Agreement or arising out of the acts or conduct of either Vendor [Higher Ed] or its employees."[29] Higher Ed owed no duty to indemnify Aviation Institute for the latter's independent violations of federal law, including the TCPA. And such a duty cannot otherwise be created and grafted onto the agreement under Georgia law. *Ryder*, 281 Ga. at 737–78.

This leaves Higher Ed's alleged breach of contract. On this score, Aviation Institute (1) asserts a stand-alone breach of contract claim, and (2) argues Higher Ed's alleged breach may form the basis of a duty to indemnify Aviation Institute for any liability stemming from Person's TCPA claims. In relevant part, the Insertion Agreement provides:

> Vendor [Higher Ed] may only submit leads to Client through sites that are non-incentivized and directly owned or managed by Vendor. Vendor may use direct

---

[29]   ECF 39-1, at 3.

affiliates at their own risk. Vendor assumes any and all responsibility for their contracted affiliates and their actions. No affiliate beyond a direct affiliate of Vendor may be used.[30]

It is undisputed that Person initially contacted Apptness through *higherincomejobs.com*. Person's information then passed from Apptness, to EduFirst, to Higher Ed, to MDT, and ultimately to Aviation Institute. According to Aviation Institute, Higher Ed breached the Insertion Order by using Apptness as a non-contracted, indirect affiliate for lead generation. But even assuming Higher Ed did so, this alleged breach has no bearing on Aviation Institute's indemnification claim. To be sure, Higher Ed agreed to indemnify MDT's "Client" for "any and all claims related to this Vendor's breach of this Agreement."[31] But in Count I, Aviation Institute seeks broad indemnity not for Higher Ed's alleged breach of contract relating to the latter's use of an indirect affiliate, but for any liability stemming from Person's TCPA claims. This argument is unpersuasive; there is no justification to transmute an alleged breach of a separate contractual provision into a carte-blanche duty to indemnify a purported third-party beneficiary for unrelated violations of the TCPA. In sum, Aviation Institute's

---

[30]   *Id.*

[31]   *Id*.

indemnification claim lacks support for this additional reason. *See, e.g., Park Pride Atlanta, Inc. v. City of Atlanta*, 246 Ga. App. 689, 690–93 (2000).

Count II of the Third-Party Complaint presents an independent breach of contract claim. Aviation Institute alleges it is a third-party beneficiary to the Insertion Order and that Higher Ed breached that contract by using an indirect affiliate—Apptness—to generate leads. The elements of a breach of contract claim are "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584, 590 (2013) (citing *Norton v. Budget Rent A Car System*, 307 Ga. App. 501, 502 (2010)). According to Georgia law, "status as a third-party beneficiary does not imply standing to enforce every promise within a contract," but it does confer authority to "enforce those promises made directly for [its] benefit." *Archer W. Contractors, Ltd. v. Est. of Pitts*, 292 Ga. 219, 227 (2012). "[T]he intent to create a third-party beneficiary must appear on the face of a contract." *Perry Golf Course Dev., LLC v. Hous. Auth. of City of Atlanta*, 294 Ga. App. 387, 388 (2008).

In its motion for summary judgment, Higher Ed focuses almost exclusively on Aviation Institute's indemnification claim. It does not, however, advance a cogent theory as to why it should be entitled to summary judgment on Aviation

Institute's breach of contract claim. And based on the record—as well as the Court's assumptions at this stage that: (1) Aviation Institute may be a third-party beneficiary to the Insertion Order and (2) may enforce this specific provision— Aviation Institute has made out at least a *prima facie* claim for breach of contract. Although the claim may not ultimately be viable for various reasons, Higher Ed has offered no basis in law or fact for why it cannot advance beyond this motion for summary judgment. Therefore, Aviation Institute may proceed with this claim.

### III.   CONCLUSION

Aviation Institute's motion to dismiss [ECF 61] and motion to strike are **DENIED**. Higher Ed's motion for summary judgment [ECF 71] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED** this the 8th day of June 2021.

Steven D. Grimberg
United States District Court Judge